STATE OF HAWAII, Plaintiff-Appellee,
v.
LIGAYA DELA CRUZ, aka Joy Dela Cruz, Defendant-Appellant.
No. 28054.
In the Intermediate Court of Appeals of Hawaii.
January 9, 2008.
On the briefs:
Brandon K. Flores, for Defendant-Appellant.
Christopher D.W. Young, Michael L. Parrish, Garry K. Senaga, Deputy Attorneys General, for Plaintiff-Appellee.

SUMMARY DISPOSITION ORDER
FOLEY, Presiding Judge, NAKAMURA and FUJISE, JJ.
Defendant-Appellant Ligaya Dela Cruz, aka Joy Dela Cruz, (Dela Cruz) appeals from the Judgment of Conviction and Sentence filed on July 17, 2006 in the Circuit Court of the First Circuit[1] (circuit court). A jury found Dela Cruz guilty of eight counts of Forgery in the Second Degree, in violation of Hawaii Revised Statutes (HRS) § 708-852 (Supp. 2006), and six counts of Theft in the Second Degree, in violation of HRS §§ 708-831(1)(b) (Supp. 2006) and 708-830(2) (1993).
On appeal, Dela Cruz advances the following five points of error:
(1) There was insufficient evidence to convict her of the eight Forgery in the Second Degree counts.
(2) There was insufficient evidence to convict her of the six Theft in the Second Degree counts.
(3) The circuit court erred when it allowed Manuel Calizo (Calizo) to testify.
(4) The circuit court erred when it denied her motion for a mistrial.
(5) The deputy attorney general committed misconduct in eliciting testimony of a witness in disregard of the circuit court's prior ruling.
Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Dela Cruz's points of error as follows:
(1) Dela Cruz raises five arguments challenging the sufficiency of the evidence supporting her forgery convictions.
Dela Cruz first argues that she did not commit a criminal act of forgery because Calizo, whether competent to do so or not, signed the Special Power of Attorney (SPOA) and therefore there was no act by Dela Cruz to make any forged instrument. In support of this theory, she cites the requirement that a person must "falsely make" a "complete written instrument," as set forth in HRS § 708-852(1) (Supp. 2006), which provides in relevant part:
§ 708-852 Forgery in the second degree. (1) A person commits the offense of forgery in the second degree if, with intent to defraud, the person falsely makes . . . a written instrument, . . . which is or purports to be . . . a deed, will, codicil, contract, assignment, commercial instrument, or other instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status.
We first note that the "intent to defraud" element may be satisfied by inferences drawn from the circumstances.[2] State v. Brighter, 62 Haw. 25, 32, 608 P.2d 855, 860 (1980). The determinative question is whether substantial evidence supports the jury's finding that Dela Cruz "falsely made" a written instrument affecting Calizo's legal interests, as that term is defined in the statute.
HRS § 708-850(4) (Supp. 2006) provides, in relevant part:
(4) "Falsely make," in relation to a written instrument, means to make or draw a complete written instrument,. . . which purports to be an authentic creation of its ostensible maker . . ., but which is not . . . because the ostensible maker . . . is fictitious or because, if real, the same did not authorize the making or drawing thereof[.]
Essentially, Dela Cruz argues that she did not draw a "complete written instrument" because Calizo's act of signing the SPOA is what completed it. The State responds that Dela Cruz "falsely made" the SPOA by procuring Calizo's signature thereon with full knowledge that he lacked capacity to "authorize the making or drawing thereof."
HRS § 708-850(4) requires that Dela Cruz draw a (1) complete written instrument (2) purporting to be authentic, but which is (3) not authentic because the purported maker did not authorize its making. As to the first two elements, there is no dispute that the SPOA used by Dela Cruz to obtain funds was complete and purported to be authentic. As to the third element, the jury could have inferred, under the circumstances and in light of the medical testimony, that Calizo did not authorize its making, whether or not his signature appeared thereon. We conclude that an otherwise "complete written instrument" may be considered "falsely made" if any necessary signature is knowingly obtained from a party lacking the capacity to understand the quality and nature of his actions. As stated in the Commentary to HRS §§ 708-851 and 708-853 (1993), the emphasis and common element of forgery are that the "final product falsely purports to be an authentic creation of its ostensible maker." The State provided Dr. Sewell's testimony that Calizo lacked the necessary capacity to make decisions involving the SPOA at the time Dela Cruz procured Calizo's signature. The State also provided the testimony of Dr. DesJarlais, who testified that, in his opinion, Calizo's stroke had rendered Calizo unable to make decisions or form a reasonable judgment as to appointing someone to hold his power of attorney.
Dela Cruz's remaining contentions that (1) Calizo's act of signing meant the SPOA was a genuine document containing a false representation but not a forgery, (2) "the making of a genuine document containing a false representation is not forgery," and (3) the SPOA was not falsely made because it was genuine and authentic as signed by Calizo and therefore not a forgery are redundant and miss the point of the forgery statute  that the final product purports to be an authentic creation of its maker, but is not.
Finally, Dela Cruz contends the SPOA was not void, but merely voidable. In support of this argument, Dela Cruz cites Christian v. Waialua Agricultural Co., 31 Haw. 817 (1931), where the Supreme Court of the Territory of Hawaii held that a deed executed by a person later judged to be mentally incompetent was not void, but only voidable; however, the court also recognized that if the person dealing with the incompetent actually knew of the signatory's incompetence, or the incompetent had been judicially-declared incompetent, then the incompetent's deed would be universally void. Id. at 882. Here, the jury could have easily inferred from the testimony of Dr. Sewell that Dela Cruz knew of Calizo's incompetence and indeed exploited it; therefore, the SPOA may be considered void and not merely voidable. Dela Cruz's forgery convictions rest upon substantial evidence.
(2) Dela Cruz contends her theft convictions are not supported by substantial evidence. HRS § 708-830 (1993) defines Theft as follows:
§ 708-830 Theft. A person commits theft if the person does any of the following:
(1) Obtains or exerts unauthorized control over property. A person obtains, or exerts control over, the property of another with intent to deprive the other of the property.
(2) Property obtained or control exerted through deception. A person obtains, or exerts control over, the property of another by deception with intent to deprive the other of the property.
Dela Cruz argues that her exercise of control over Calizo's property was authorized by the SPOA and thus cannot be considered theft. However, the jury could have reasonably inferred that Dela Cruz knew of Calizo's incapacity at the time of he executed the SPOA and therefore considered Dela Cruz's actions unauthorized. Moreover, Dela Cruz's actions were deceptive in that she obtained control over Calizo's property by deceiving various bank officers and tenants as to the nature of the SPOA she wielded.
Dela Cruz also contends there was no evidence of any intent to deprive Calizo of his property and she only used Calizo's funds to manage his affairs during his incapacity. To the contrary, the evidence indicated that Dela Cruz obtained approximately $3,475 in cash from Calizo's bank accounts and insurance checks. Dela Cruz also received approximately $9,200 in rental income from Calizo's tenants. During the time Dela Cruz alleges that she was managing Calizo's affairs, his mortgage payments either were not paid at all or only partially paid. Based on this evidence, the jury could have inferred an intent to deprive Calizo of his property. Dela Cruz's theft convictions rested upon substantial evidence.
(3) Hawaii Rules of Evidence (HRE) Rule 601 presumes every person competent to testify except as otherwise provided by the HRE. HRE Rule 603.1 disqualifies as a witness any individual incapable of expressing himself or herself understandably or incapable of understanding the duty to testify truthfully. The circuit court's decision not to hold a competency hearing is reviewed under the right/wrong standard. State v. Kelekolio, 74 Haw. 479, 527, 849 P.2d 58, 79 (1993).
Dela Cruz's argues this point in her opening brief, but she provides no citations to the record or any case law. Dela Cruz claims the circuit court should have conducted a competency hearing, but identifies no rule requiring said hearings.[3] For this reason alone, we should deny this point of error pursuant to Rule 28(b)(4) of the Hawai`i Rules of Appellate Procedure (HRAP). Nonetheless, we are persuaded that the circuit court was correct in permitting Calizo to testify. Dela Cruz objected to Calizo's testimony, and the circuit court inquired into the matter. Calizo responded to questions on his family, children, and townhouse. He pointed out Dela Cruz in the courtroom. The circuit court concluded that Calizo could testify as to those matters he recollected and the jury could decide what weight to give to the testimony. Under these circumstances, the circuit court acted correctly and did not plainly err by allowing Calizo to testify.
(4) Whether the deputy attorney general committed misconduct by asking Calizo whether or not he signed the SPOA, in supposed contradiction to the circuit court's pretrial ruling, is reviewed under the harmless beyond a reasonable doubt standard. State v. Sawyer, 88 Hawai`i 325, 329 n.6, 966 P.2d 637, 641 n.6 (1998). Dela Cruz's interpretation of the court's ruling lacks any support in the record. Prior to the start of trial, the circuit court ruled that "there will be no evidence from Ms. Villanueva or from any other government witness that the signature of Manuel Calizo on the [SPOA] . . . appears different than when it was initially executed before the notary." The State elicited testimony from Calizo that he did not recall the SPOA or his act of signing it. Dela Cruz objected, and the circuit court overruled the objection, noting that
the court's ruling [was] that  that specifically that there be no testimony or argument that the signature of Manuel Calizo on the [SPOA] appears different than what was originally notarized. The testimony today is that this individual is saying that it wasn't his signature . . that's a different issue.
The circuit court's pretrial ruling was completely unambiguous. The State plainly did not elicit or attempt to elicit any testimony from Calizo that the signature as it appeared on the SPOA at trial differed from the way it had appeared at the time it was made. The question of whether Calizo made any signature is an entirely separate matter. No misconduct occurred.
(5) We review the denial of a motion for mistrial under the abuse of discretion standard. State v. Loa, 83 Hawai`i 335, 349 & 354, 926 P.2d 1258, 1272 & 1277 (1996). Dela Cruz's argument on this point is insubstantial, and thus we could disregard it pursuant to HRAP Rule 28(b)(7). Nonetheless, we conclude the circuit court did not abuse its discretion. Dela Cruz contends that she faced a substantial detriment when she was denied the opportunity to call a handwriting expert to testify at trial and that her decision to forego expert testimony was the result of the State's representation that it would not question the veracity of Calizo's signature on the SPOA. However, as discussed earlier, the State never made any such representation. Nonetheless, out of an abundance of caution, the circuit court struck Calizo's testimony about his signature from the record and so informed the jury and precluded any argument on that point. Under these circumstances, we cannot say the circuit court "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party-litigant." Loa, 83 Hawai`i at 349, 926 P.2d at 1272 (internal quotation marks and citation omitted). The circuit court therefore did not err in denying Dela Cruz's motion for mistrial.
Therefore,
The Judgment of Conviction and Sentence filed on July 17, 2006 in the Circuit Court of the First Circuit is affirmed.
NOTES
[1] The Honorable Richard W. Pollack presided.
[2] Defendant-Appellant Ligaya Dela Cruz does not deny that she drew up the Special Power of Attorney (SPOA) and obtained the signature of Manuel Calizo (Calizo) thereon or that the SPOA was a written instrument affecting Calizo's legal rights.
[3] The decision to hold a competency hearing is within the circuit court's discretion. State v. Kelekolio, 74 Haw. 479, 529 n.24, 849 P.2d 58, 80 n.24 (1993).